**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LARRY WILSON, | : | CIVIL ACTION |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| BRENDA L. TRITT, et al., | : | No. 15-1455 |
| | : | |
| Respondents. | : | |

**REPORT & RECOMMENDATION**

TIMOTHY R. RICE                                               August 2, 2016
U.S. MAGISTRATE JUDGE

Petitioner Larry Wilson, a prisoner at the Pennsylvania State Correctional Institution at
Frackville, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  I
recommend Wilson's claims be denied with prejudice as procedurally defaulted and meritless.

**FACTUAL AND PROCEDURAL HISTORY**

In October 2003, Wilson was tried by a jury for criminal homicide, criminal trespass, and
possession of an instrument of crime.  See Commonwealth v. Wilson, CP-09-CR-0002838-2003,
Crim. Dkt. at 4; N.T. 10/27/03 at 18.  The evidence showed that on February 6, 2003, Wilson
and his nephew, Michael Williams, were driving around, smoking PCP and drinking beer.
12/13/04 Tr. Ct. Op. at 8; N.T. 10/28/03 at 233-34.  Williams dropped Wilson off at the home of
his sister, Laverne Wilson.  12/13/04 Tr. Ct. Op. at 1, 9; N.T. 10/28/03 at 234.  Wilson then sat
down with Laverne and her housemate, William Friesma, to watch television; they did not talk.
12/13/04 Tr. Ct. Op. at 1, 9; N.T. 10/28/03 at 21, 25-28, 30-31, 234.  At one point Friesma and
Wilson went outside for a short time.  N.T. 10/28/03 at 31-32.  After they returned and sat down,
Wilson maintained an angry stare at Friesma.  12/13/04 Tr. Ct. Op. at 9; N.T. 10/28/03 at 33-35.

When Friesma stood up to leave at Laverne's suggestion, Wilson pulled out a knife and stabbed Friesma in the neck.  12/13/04 Tr. Ct. Op. at 1, 9; N.T. 10/28/03 at 35-38.  Friesma went to his car, drove away, and was later found unconscious in his car not far from the house.  12/13/04 Tr. Ct. Op. at 1; N.T. 10/28/03 at 50-51, 115-17, 173, 189.  He died in his car from loss of blood caused by the knife wound.  12/13/04 Tr. Ct. Op. at 1; N.T. 10/28/03 at 148-50, 170.

Officer Sean Cosgrove arrived at the scene and found Wilson to be cooperative and compliant.  12/13/04 Tr. Ct. Op. at 9; N.T. 10/28/03 at 196-98; N.T. 10/29/03 at 12-13. However, Wilson insisted Cosgrove empty his pockets before he went outside because he feared being shot by the police.  12/13/04 Tr. Ct. Op. at 9; N.T. 10/28/03 at 196.  At the police station, officers observed Wilson was not confused, walked independently, spoke clearly, could recall events, and was able to provide appropriate and timely responses to their questions.  12/13/04 Tr. Ct. Op. at 9-10; N.T. 10/28/03 at 206-07, 210-11, 257, 259, 288, 296; N.T. 10/29/03 at 61.

Wilson later told police the demons told him to kill Friesma.  9/22/05 Super. Ct. Op. at 1-2; N.T. 10/28/03 at 268, 274; N.T. 10/29/03 at 65-66.  Wilson's urine and blood tested positive for PCP and marijuana.  9/22/05 Super. Ct. Op. at 1-2; N.T. 10/29/03 at 91-93.

Laverne Wilson testified at trial that she witnessed Wilson reach into the side of his pants, jump on Friesma, and bring his hand down onto the victim's neck.  N.T. 10/28/03 at 36-38.  She soon after removed a knife out of Wilson's hand.  Id. at 39.

Two defense expert witnesses opined that Wilson was under the influence of drugs at the time of the murder and was unable to form the specific intent required for first-degree murder. Dr. Gary Lage, a pharmacologist and toxicologist, testified that about seven hours after the incident, the level of PCP in Wilson's blood was six times higher than the level at which his ability to think and reason would begin to become impaired.  N.T. 10/29/03 at 141.  He further

testified the marijuana and alcohol detected in Wilson's blood would have exacerbated the effects of the PCP, and concluded that Wilson would have lacked the cognitive ability to form a specific intent to kill.  Id. at 142-43.  Dr. Kenneth Weiss, a psychiatrist, testified that Wilson's blood level and exhibited behaviors were consistent with someone under the influence of PCP, and similarly concluded Wilson lacked the capacity to form specific intent to kill at the time of the incident due to PCP intoxication.  Id. at 219-25.

During its deliberations, the jury came back with two questions regarding Wilson's defense of voluntary intoxication: (1) "must we consider voluntary intoxication in reaching our verdict?;" and (2) "what is the legal definition of voluntary intoxication?"  N.T. 10/30/03 at 123. In response, the trial judge stated:

> [T]he only way that it would be proper for me to address the first question posed would be to restate the definitions of first and third degree murder, reminding the jury of the obligations of the Commonwealth to prove the elements thereof beyond a reasonable doubt, and then immediately in conjunction therewith, offer the instruction on voluntary intoxication as a defense to first degree murder, so that the jury may see the interplay of that defense and the obligations of the Commonwealth to prove certain things beyond a reasonable doubt.

N.T. 10/30/03 at 123-24.  Wilson's defense counsel made no objection.  Id. at 124.  The trial court then reviewed the elements of first-degree and third-degree murder, and the defense of voluntary intoxication.  Id. at 125-32.

On October 30, 2003, the jury convicted Wilson of all charges.  See Crim. Docket at 4; 12/13/04 Tr. Ct. Op. at 1.  On December 21, 2003, Wilson was sentenced to life imprisonment, with concurrent sentences of 16-months-to-7 years imprisonment for criminal trespass and 16 months-to-5 years imprisonment for possession of an instrument of crime.  Crim. Docket at 5. On September 22, 2005, the Superior Court affirmed Wilson's judgment of sentence.  See

9/22/05 Super. Ct. Op.  On May 1, 2007, the Pennsylvania Supreme Court denied review.  Crim. Docket at 13; 2/5/13 PCRA Ct. Op. at 1.

Wilson filed a pro se petition under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. § 9541 et seq. ("PCRA") on April 11, 2008.  Crim. Docket at 13.  The PCRA court appointed counsel, who filed an amended PCRA petition on July 5, 2011.  Id. at 15.  The PCRA court appointed new counsel, who filed a second amended PCRA petition on June 12, 2012.  Id. at 18.  After holding a hearing, the PCRA court denied Wilson's petition on January 31, 2013. Id. at 20; 1/31/13 PCRA Ct. Order; 4/2/13 PCRA Ct. Op.  The Superior Court affirmed, and the Pennsylvania Supreme Court denied review on January 27, 2015 .  Crim. Docket at 22.

On March 15, 2015, Wilson timely filed this habeas petition.  Habeas Pet. (doc. 1).

## DISCUSSION

Before seeking federal habeas relief, a petitioner must exhaust all available state court remedies, "thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citations omitted); see also § 2254(b)(1).  The petitioner must "fairly present his claim in each appropriate state court . . . alerting that court to the federal nature of the claim."  Baldwin, 541 U.S. at 29 (quotation and citation omitted).  If a petitioner has failed to exhaust his state court remedies and the state court would now refuse to review the claim for some procedural reason, the claim may be denied as procedurally defaulted.  See Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991).  A habeas claim also may be denied as procedurally defaulted if the petitioner presented it to the state court, but the state court refused to address it on its merits based on "a state-law ground that 'is independent of the federal question and adequate to support the judgment.'"  Cone v. Bell, 556 U.S. 449, 465 (2009) (citations omitted).

A procedurally defaulted claim may be considered only if a petitioner demonstrates: (1) a legitimate cause for the default and actual prejudice from the alleged constitutional violation; or (2) a fundamental miscarriage of justice from a failure to review the claim.  Coleman, 501 U.S. at 750.  To establish a fundamental miscarriage of justice, a petitioner must present "new reliable evidence" of his actual innocence, such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence."  Schlup v. Delo, 513 U.S. 298, 321-24 (1995).

If a state court has decided a claim, its decision merits substantial deference.  See 28 U.S.C. § 2254(d); Cullen v. Pinholster, 563 U.S. 170, 181 (2011) ("state-court decisions [must] be given the benefit of the doubt").  I can grant a writ of habeas corpus only if I find the state court's decision: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); see Showers v. Beard, 635 F.3d 625, 628 (3d Cir. 2011).  I must presume the state court's findings of fact are correct, and Wilson may rebut that presumption only with clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).

I.     Insufficient Evidence to Support First-Degree Murder Conviction

Wilson claims the Commonwealth failed to present sufficient evidence to support his conviction for first-degree murder under Jackson v. Virginia, 443 U.S. 307 (1979) because the evidence failed to demonstrate a specific intent to kill.[1] Hab. Pet. at 8; Pet.'s Reply at 17-18.

---

[1]     The Commonwealth argues Wilson's entire petition should be denied because he has failed to properly plead and prove his claims as he makes only bald claims of error without providing factual or evidentiary support.  Cmmw. Resp. (doc. 5) at 21.  Wilson's habeas petition offers almost no facts and no authority for his claims, and he failed to file a brief in support of his petition.  See Rule 2(c), 28 U.S.C. foll. § 2254; United States v. Thomas, 221 F.3d 430, 437

Wilson's claim is unexhausted.  See Baldwin, 541 U.S. at 29.  When he appealed to the Superior Court, he cited solely state law.  See Commw. Resp., Ex. D, Brief for Appellant at 2-3, 23-27.  The state courts, therefore, were not on notice of any claim based on federal law.  See Baldwin, 541 U.S. at 29; O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (state court must have full and fair opportunity to resolve federal constitutional claims before those claims are presented to federal court).  Moreover, because Wilson can no longer present his claim to the state court, it is procedurally defaulted.  See Pa. R.A.P. 903 (allowing one right to appeal to Superior Court within 30 days of trial court's final order); 42 Pa. C.S.A. § 9545(b)(1) (requiring PCRA petition to be filed within one year of final judgment); Coleman, 501 U.S. at 735 n.1.  Wilson also has failed to allege cause, prejudice, or a fundamental miscarriage of justice to excuse the procedural default, see Coleman, 501 U.S. at 750, and I have identified none.

Wilson's claim also fails on the merits.  Wilson is entitled to relief if, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012) (citing Jackson, 443 U.S. at 319).  I must presume the trier of fact

---

(3d Cir. 2000) ("vague and conclusory allegations contained in a [habeas] petition may be disposed of without further investigation"); Zettlemeyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir.1991) (petitioner "cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations" and instead "must set forth facts to support his contention"); see also McFarland v. Scott, 512 U.S. 849, 856 (1994) (habeas petitions "must meet heightened pleading requirements").  However, he filed a brief in reply to the Commonwealth's Response, in which he developed all but one of his claims with facts and legal support.  See Pet.'s Reply (doc. 7).  Although Wilson provided support for his claims only in reply to the Commonwealth's Response, I will address them.  See Leamer v. Fauver, 288 F.3d 532, 547 (3d Cir. 2002) (requiring liberal construction of pro se complaints).  Similarly, although Wilson provided the federal constitutional basis for his sufficiency of the evidence and prosecutorial misconduct claims only in his reply brief, I will find those claims cognizable.  See id.; Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (federal habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

resolved any factual conflicts in favor of the prosecution, and must defer to that resolution.

Jackson, 443 U.S. at 326; see also Cavazos v. Smith, 132 S. Ct. 2, 6 (2011).  When a state court

decision rejects a sufficiency of the evidence challenge, I must determine whether its decision

was "objectively unreasonable."  Cavazos, 132 S. Ct. at 4.

Both the trial court and Superior Court concluded the evidence was sufficient to support

Wilson's first-degree murder conviction.  The courts summarized the testimony at trial and noted

the jury received proper instruction on voluntary intoxication.  12/13/04 Tr. Ct. Op. at 8-10;

9/22/05 Super. Ct. Op. at 7-9.  The courts noted the relevant evidence tending to show Wilson

"was not so overwhelmed that he lost his faculties," 9/22/05 Super. Ct. Op. at 7, including: (1)

Michael Williams's testimony that Wilson had told him before the murder that he wanted to kill

someone and that Friesma was prejudiced against black people, 9/22/05 Super. Ct. Op. at 7

(citing N.T. 10/28/03 at 268); (2) [Laverne]'s testimony that Wilson maintained an angry stare at

Friesma, 12/13/04 Tr. Ct. Op. at 9 (citing N.T. 10/28/03 at 35); 9/22/05 Super. Ct. Op. at 7

(citing N.T. 10/28/03 at 30-36); (3) Sergeant Cosgrove's testimony that shortly after the incident,

Wilson was compliant and cooperative, his speech was not slurred, and he required no assistance

to walk, 12/13/04 Tr. Ct. Op. at 9 (citing N.T. 10/28/03 at 196-98); 9/22/05 Super. Ct. Op. at 7

(citing N.T. 10/28/03 at 196-200); and (4) Officer Hansell's testimony that Wilson was calm,

compliant, cooperative, steady, and not visibly under the influence, 12/13/04 Tr. Ct. Op. at 9-10;

9/22/05 Super. Ct. Op. at 7 (citing N.T. 10/28/03 at 286-89, 296).  The Superior Court found the

evidence showed Wilson "acted in an intentional, deliberate, premeditated manner when he

killed the victim," and concluded: "[c]ertainly, there is evidence from which the jury could

conclude the appellant was not so intoxicated as to have lost control of his faculties."  9/22/05

Super. Ct. Op. at 7-8.

Those state court decisions were not contrary to, nor an unreasonable application of, clearly established United States Supreme Court law.  See Parker, 132 S. Ct. at 2152.  They also were not based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).

A homicide constitutes first-degree murder in Pennsylvania when it is committed with a specific intent to kill.   See 42 Pa. C.S. § 2502; Commonwealth v. Moore, 373 A.2d 1101, 1104 (Pa. 1977).  A specific intent to kill also sufficiently shows that the murder was willful, deliberate, and premeditated.  See Commonwealth v. O'Searo, 352 A.2d 30, 37 (Pa. 1976) ("requirement of premeditation and deliberation is met whenever there is a conscious purpose to bring about death"); Commonwealth v. Earnest, 21 A.2d 38, 40 (Pa. 1941) (premeditation and an intent to kill can be formulated very quickly).   "[E]vidence of the conduct of the accused and the circumstances surrounding the crime may be considered in determining the mental state which accompanied the act."  Moore, 373 A.2d at 1104.  The jury also may infer that a killing was intentional based on a defendant's "use of a deadly weapon directed at a vital organ of another human."  Id.

Evidence of intoxication or drugged condition may be used to reduce murder from a higher degree to a lower degree.  18 Pa. C.S. § 308.  A defendant, who admits criminal liability, has the burden of proving he was so overwhelmed to the point of losing his faculties and sensibilities that he could not form the specific intent to kill.  See Commonwealth v. Sanchez, 82 A.3d 943, 977 (Pa. 2013); Commonwealth v. Flor, 998 A.2d 606, 627 n.7 (Pa. 2010) (describing the standard applied by courts to voluntary intoxication defense as a "stringent standard").

Wilson argues that testimony from his experts and sister undermined any evidence of a specific intent to kill.  He notes his sister testified that he was in a "trance-like" state but that he "snapped out of it."  Pet.'s Reply at 18 (citing N.T. 10/28/03 at 34, 69).  He also argues his sister

8

testified he "jumped over on Bill [Friesma]," id. (citing N.T. 10/28/03 at 37), which was not a description of a "strike with precision but instead the wild swing of a knife[, o]ne that happened to land on a vital spot," id. Laverne's testimony does not support Wilson's argument. She testified that Wilson "snapped out of it" before the murder occurred, implying he had regained his faculties. N.T. 10/28/03 at 34. Further, although she testified Wilson "jumped over on Bill," she also testified Wilson then "was just going down on him, like that [indicating]."[2] Id. at 38.

Furthermore, the jury was free to weigh the evidence and determine the credibility of witness testimony. See Jackson, 442 U.S. at 318-19 (sufficiency of the evidence standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). The jury could have found from the testimony of Mr. Williams, Laverne, and police officers regarding Wilson's statements and demeanor leading up to and after the incident, that Wilson had the specific intent to kill and was not "so overwhelmed" by his intoxication that he lost control over his faculties. See Sanchez, 82 A.3d at 977; Commonwealth v. Bardo, 105 A.3d 678, 716 (Pa. 2014) ("The mere fact of intoxication is not a defense; rather, the defendant must prove that his cognitive abilities of deliberation and premeditation were so compromised by voluntary intoxication that he was unable to formulate the specific intent to kill."). The jury also could infer that Wilson acted with a specific intent to kill based on the evidence showing Friesma was stabbed in a vital part of the body. See O'Searo, 352 A.2d at 37; Moore, 373 A.2d at 1104.

It was not objectively unreasonable for the state courts to conclude, based on Wilson's actions and the stab wound to the neck, that a rational trier of fact could have found Wilson

---

[2]       The court did not explain the witness's movements.

guilty of first-degree murder.  See Parker, 132 S. Ct. at 2152.  Wilson's sufficiency claim is meritless.

     II.     Trial Court Erred by Limiting Defense Expert Testimony

     Wilson claims the trial court erred by refusing to admit expert testimony regarding the basis of the expert's opinion because he exercised his right to testify.  Hab. Pet. at 10.  Although Wilson fails to provide factual or legal support for this claim, I will address it.  See Leamer, 288 F.3d at 547.

     Because this claim is both incomprehensible and a state evidentiary ruling, it is non-cognizable.  See Rule 2(c), 28 U.S.C. foll. § 2254; Estelle, 502 U.S. at 67-68; Crane v. Kentucky, 476 U.S. 683, 690 (1986) ("we have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted"); Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) ("[A] state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."). Further, because the state courts were not put on notice of any federal claim Wilson may be raising, such claim is procedurally defaulted.  See supra at 6.  Wilson also has failed to allege cause, prejudice, or a fundamental miscarriage of justice to excuse the procedural default, see Coleman, 501 U.S. at 750, and I have identified none.

     III.     Prosecutorial Misconduct

     Wilson next argues his due process rights were violated when the prosecutor argued to the jury that it should convict Wilson based on his future dangerousness.  Hab. Pet. at 12; Reply at 18.

On appeal to the Superior Court, Wilson cited solely state law in support of this claim. See Commw. Resp., Ex. D., Brief for Appellant at 3, 27-29.  The state courts, thus, were not on notice of any claim based on federal law.  See O'Sullivan, 526 U.S. at 845.  Such claim is unexhausted.  Moreover, because Wilson can no longer present his claim to the state court, it is procedurally defaulted.  See supra at 6.  Wilson also fails to allege cause, prejudice, or a fundamental miscarriage of justice to excuse the procedural defaults, and I have identified none.

This claim is also meritless.  During closing argument, the prosecutor stated: "The defendant has done PCP, according to him, for years. . . . Detective Perkins has also indicated . . . that he is violent when he is on PCP.  Are we to allow him to go back and do some more PCP and be violent again?  How many people have to die at Mr. Wilson's hands?"  N.T. 10/30/03 at 64.  Defense counsel objected, and the court provided a corrective instruction: "Yes, Ladies and gentlemen, the sentence or outcome which results from any verdict you rendered is not a matter of concern for you.  This is a matter for the Court.  You need to decide this case solely upon the evidence as you find it and the law as I instruct you."  Id.

The trial court found the curative instruction "more than adequately apprised the jury of their responsibility to base their verdict on the evidence presented and the law as explained to them," and ensured a fair trial.  12/13/04 Tr. Ct. Op. at 11.  The court noted the instruction satisfied the defense because defense counsel did not object further.  Id.  The Superior Court agreed, concluding the remarks had only a slight effect, if any at all, on the jury, and did not deprive Wilson of a fair trial.  Id.

Those state court decisions were not contrary to, nor an unreasonable application of, clearly established United States Supreme Court law.  See Greer v. Miller, 483 U.S. 756, 765 (1987) ("To constitute due process violation, the prosecutorial misconduct must be of sufficient

significance to result in the denial of the defendant's right to a fair trial.") (internal quotation marks omitted).  They also were not based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d).

Prosecutorial misconduct merits habeas relief only if it "infected the trial with unfairness," such as by manipulating or misstating the evidence, or implicating other specific rights of the accused.  Darden v. Wainwright, 477 U.S. 168, 181-82 (1986).  Prosecutorial actions that are "undesirable or even universally condemned" may fail to reach constitutional significance, id., because due process protects only "the fairness of the trial," Smith v. Phillips, 455 U.S. 209, 219 (1982), and does not address "the culpability of the prosecutor," id. Prosecutors are given great latitude, especially during closing arguments, to ask the jury to draw inferences based on the evidence presented at trial.  See, e.g. Walker, 280 Fed. App'x at 216; United States v. Werme, 939 F.2d 108, 117 (3d Cir. 1990).

When reviewing potential misconduct, I must determine whether the prosecutor's conduct "had substantial and injurious effect or influence in determining the jury's verdict" in light of the record as a whole.  Brecht v. Abramson, 507 U.S. 619, 638 (1993); see Walker v. Palakovich, 280 F. App'x 212, 215-16 (3d Cir. 2008) (prosecutor's comments must be viewed in the context of the entire trial, including the severity of conduct and curative instructions); see also Corredor v. Coleman, No. 09-1817, 2010 WL 391413 at *8 n.7 (E.D. Pa. Jan. 26, 2010) ("The state and federal tests for prosecutorial misconduct are 'substantively identical.'").

Even if improper, the prosecutor's comments did not deprive Wilson of a fair trial, especially in light of the court's curative instruction.  See Walker, 280 F. App'x at 216 (although prosecutor's suggestion that jury should return guilty verdict to protect witnesses' safety was improper, statements did not deprive petitioner of fair trial, especially where court issued

curative instructions); see also Darden , 477 U.S. at 179-81 (prosecutor's comments that death penalty was only guarantee against future similar acts, calling petitioner an "animal," and expressing his desire that petitioner had been killed, although improper, did not deprive petitioner of unfair trial).  Wilson also fails to show the prosecutor's comment had a substantial effect on the jury's verdict.  See Brecht, 507 U.S. at 638.

      IV.     Ineffective Assistance of Trial Counsel

      Clearly established federal law governing ineffectiveness claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  See Premo v. Moore, 562 U.S. 115 (2011).  The defendant must show: (1) counsel's performance was deficient, i.e., counsel was not functioning as counsel guaranteed by the Sixth Amendment; and (2) the deficient performance prejudiced him, meaning that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Strickland, 466 U.S. at 687, 694.  Pennsylvania applies the same test.  See Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000); Commonwealth v. Sneed, 899 A.2d 1067, 1075-76 (Pa. 2006).

      Counsel's ineffectiveness is measured objectively, considering all the circumstances.  See Strickland, 466 U.S. at 687-88.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  Id. at 688.  I must be "highly deferential" and "indulge a strong presumption" that counsel's challenged actions might be considered sound strategy.  Id. at 689.  A strategic choice "made after thorough investigation of law and facts relevant to plausible options [is] virtually unchallengeable."  Id. at 690-91.  The relevant inquiry is not whether Wilson's counsel was prudent, appropriate, or perfect.  Burger v. Kemp, 483 U.S. 776, 794 (1987).  Rather, the focus is simply to ensure the proceedings resulting in Wilson's conviction and sentence were fair.  See Strickland, 466 U.S. at 684-85.

Review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas." Yarborough v. Gentry, 540 U.S. 1, 6 (2003). Accordingly, if the state court addressed counsel's effectiveness, and applied the correct legal standard, a petitioner must show the state court's decision was objectively unreasonable. Woodford v. Visciotti, 537 U.S. 19, 25 (2002). "[I]t is not enough to convince a federal habeas court that, in its independent judgment," the state court erred in applying Strickland. Bell v. Cone, 535 U.S. 685, 699 (2002). Wilson, therefore, "must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in [federal court in] the first instance[.]" Id. at 698-99.

a.   Failing to Communicate Plea Offer

Wilson claims trial counsel was ineffective for failing to communicate a plea offer of third-degree murder. Hab. Pet. at 13-14; Pet.'s Reply at 3-4. Wilson argues a letter written to him by defense expert Dr. Weiss approximately ten months after his conviction revealed evidence of the plea offer. The letter states:

> My understanding is that you rejected a plea offer and insisted on having trial. Your lawyers told you that, by using a defense of voluntary intoxication the best you could do was to have first-degree murder reduced to third-degree. This is the same effect as getting a plea bargain. Why you chose to have a trial is mysterious to us, but it is a fact that your lawyers advised against it. Intoxication defenses are unpopular, and I am sorry to say that you gambled and lost.

11/16/12 Memo. of Law in Support of PCRA Pet., Ex. A, 8/5/04 Letter from Dr. Weiss.

During the PCRA hearing, Wilson's trial counsel testified that no plea offer was ever made. N.T. 10/3/12 at 53-54. The PCRA court credited this testimony, noting it would "not speculate as to what led Dr. Weiss to make the . . . statement regarding . . . the existence of a plea bargain." 1/31/13 PCRA Ct. Op. at 4. The Superior Court affirmed, finding the PCRA court's

determination was supported by the record, and trial counsel could not be held ineffective for failing to communicate a non-existent plea offer.  8/11/14 Super. Ct. Op. at 6-7.

The state courts' determinations were neither contrary to, nor an unreasonable application of, Strickland, or based on an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d); Williams, 529 U.S. at 407-08.  Although Dr. Weiss's letter suggests the Commonwealth offered Wilson a plea deal, trial counsel unequivocally testified to the contrary.  N.T. 10/3/12 at 53-54. She explained her trial strategy was to reduce first-degree murder to third-degree using a voluntary intoxication defense, id. at 52-53 and that if there had been a plea offer, she "would have done everything to try to get [Wilson] to take it," especially because juries generally do not like intoxication defenses, id. at 54.  Trial counsel further explained that although the trial judge suggested in a pretrial conference that Wilson may fare better in a bench trial than a jury trial, the judge made no promises he would find Wilson guilty of only third-degree murder.  Id. at 53-54.

Wilson has failed to present any additional evidence showing his trial counsel failed to convey a plea offer to him.  See Johnson v. Zerbst, 304 U.S. 458, 468 (1938) (federal habeas petition has burden of proving his claim); Goins v. Brierly, 464 F.2d 947, 949 (3d Cir. 1972) (habeas petitioner must prove facts in support of claim).  This claim is meritless.

b.  Failing to Investigate Wilson's Mental Health History

Wilson claims trial counsel was ineffective for failing to investigate his diagnosis of Hydocephalus, or Dandy Walker Syndrome,[3] which affects cognitive function and can cause

---

[3]    The Superior Court noted Dandy-Walker Syndrome is a congenital brain malformation involving the cerebellum (an area at the back of the brain that controls movement) and the fluid-filled spaces around it.  The key features of this syndrome are an enlargement of the fourth ventricle . . . , a partial or complete absence of the area of the brain between the two cerebellar hemispheres . . . , and cyst formation near the lowest part of the skull.  An increase in the size of the fluid spaces surrounding the brain as well as an increase in pressure may also be present."

unintended violent behavior.  Hab. Pet., attachment; Pet.'s Reply at 5.  Wilson argues his mental

deficiencies, coupled with his drug use, rendered him incapable of forming the specific intent to

kill.[4]  Pet.'s Reply at 9.

       The state courts found trial counsel "had no reason to pursue a diminished capacity

defense."  1/31/13 PCRA Ct. Op. at 5; 8/11/14 Super. Ct. Op. at 9.  Both the PCRA and Superior

Courts noted Wilson admitted at the PCRA hearing that he failed to tell trial counsel about his

condition, and testified he was not diagnosed with the syndrome until after trial.  1/31/13 PCRA

Ct. Op. at 5 (citing N.T. 10/3/12 at 13-14); 8/11/14 Super. Ct. Op. at 8 (citing N.T. 10/3/12 at 13,

16, 55).  They noted the only reference to the syndrome in Wilson's medical records was a 1999

MRI report that stated there was an abnormality of no clinical significance.  1/31/13 PCRA Ct.

Op. at 6; 8/11/14 Super. Ct. Op. at 8 (noting MRI states "'Possible Dandy Walker variant' . . . .

that 'is probably of no clinical significance'"); see Hab. Pet., attachment, 1/8/99 Brain MRI

("Probable Dandy-Walker variant . . . . This is probably of no clinical significance, but clinical

correlation is recommended.  Tiny arachnoid cyst, left temporal fossa also likely of no

significance.").  They also noted trial counsel provided Wilson's medical records to Dr. Weiss,

who evaluated Wilson and found no indication of Dandy Walker Syndrome.   1/31/13 PCRA Ct.

Op. at 6; 8/11/14 Super. Ct. Op. at 8.  "At best," the PCRA court found, "trial counsel was aware

---

8/11/14 Super. Ct. Op. at 7 n.3 (quoting National Institutes of Health,
http://www.ninds.nih.gov/disorders/dandywalker/dandywalker.htm).

[4]     A successful diminished capacity defense can reduce a murder conviction from first-to-
third degree.  Saranchak v. Beard, 616 F.3d 292, 307 (3d Cir. 2010) (citing Commonwealth v.
Taylor, 876 A.2d 916, 926 (Pa. 2005)).  A defendant must show he was "overwhelmed to the
point of losing his faculties and sensibilities."  Commonwealth v. Blakeney, 946 A.2d 645, 653
(Pa. 2008).  This loss can be attributable to intoxication, Commonwealth v. Spotz, 896 A.2d
1191, 1218 (Pa. 2006), or mental disorder, Commonwealth v. Cuevas, 832 A.2d 388, 293 (Pa.
2003), but must be proven using expert testimony that the defendant was unable to premeditate
and form specific intent, Saranchak, 616 F.3d at 308.

that [Wilson] had headaches and that there was an abnormality in [Wilson's] MRI that was of no clinical significance."  1/31/13 PCRA Ct. Op. at 5-6.  The court concluded: "Since there was nothing to indicate to [trial counsel] that a diminished capacity defense would have been available, trial counsel cannot be deemed ineffective for failing to pursue the defense."  Id. at 6. The Superior Court additionally noted Wilson failed to provide evidence that the syndrome causes violent behavior.[5]  8/11/14 Super. Ct. Op. at 9.

This decision was an objectively reasonable application of Strickland.  Counsel has a duty to make reasonable investigations of law and facts or to make a reasonable decision that an investigation is unnecessary.  Strickland, 466 U.S. at 690-91; see United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989).  A "decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  Strickland, 466 at 691; see Stevens v. Delaware Correctional Center, 295 F.3d 361, 370-71 (3d Cir. 2002).  "It is reasonable and proper for counsel to make strategic choices about . . . pre-trial investigation in light of information supplied by a client."  Stevens, 295 F.3d at 373 (citing Strickland, 466 U.S. at 691).

---

[5]     Wilson argues the state courts mischaracterized his claim as ineffectiveness for failing to present evidence of Dandy Walker Syndrome rather than failing to investigate.  Pet.'s Reply at 5. However, Wilson presented his claim as "failure to question witnesses as to [his] malady of Dandy Walker Syndrome," and failure "to investigate or present the defense of diminished capacity due to mental defect."  11/16/12 Memo. of Law in Support of PCRA Pet. at 3.  The PCRA court noted the dual nature of Wilson's claim, and found, given the evidence presented at the PCRA hearing, trial counsel could not be found ineffective for failing to "pursue" a diminished capacity defense.  1/31/13 PCRA Ct. Op. at 5-6.  The Superior Court described Wilson's claim as ineffectiveness for "failing to present evidence of Dandy Walker Syndrome," but underwent the same analysis as the PCRA court and similarly found counsel was not ineffective for failing to "pursue" a diminished capacity defense.  8/11/14 Super. Ct. Op. at 8-9. In any event, ineffectiveness for failing to investigate and failing to present evidence are substantially similar claims and do not render the state court decisions unreasonable.  See Williams v. Taylor, 529 U.S. 362, 390, 395-96 (2000) (analyzing petitioner's claim of ineffectiveness of counsel for failing to investigate and present substantial mitigating evidence as one claim).

Although Wilson informed counsel he suffered from headaches, N.T. 10/3/12 at 14, he failed to tell counsel about any mental health diagnosis.[6] N.T. 10/3/12 at 13, 16, 55; see Strickland, 466 U.S. at 691 ("Counsel's actions are usually based . . . on informed strategic choices made by the defendant and on information supplied by the defendant.  In particular, what investigation decisions are reasonable depends critically on such information.").  Trial counsel testified she was aware Wilson suffered from headaches, and had Wilson's medical records, which included the 1999 MRI.[7]  N.T. 10/3/12 at 55.  Further, counsel provided Dr. Weiss with Wilson's medical history, and Dr. Weiss opined that the mention of Dandy Walker Variant was of no significance.[8]  N.T. 10/3/12 at 55-57.  Although Wilson testified at the PCRA hearing that

---

[6]     Wilson argues it is irrelevant that he did not tell trial counsel about his mental history because counsel had access to his medical records, which "unambiguously mention[ed] Dandy Walker Variant as an infliction" and the presence of a cyst in his brain.  Pet.'s Reply at 6-7.  Wilson contends that upon his own research, he learned that Dandy Walker Syndrome can cause developmental delays and behavioral changes, "markedly limit a person's ability to interact appropriately with the general public," id. at 7 (citing Parish v. Astrue, 2012 U.S. Dist. LEXIS 62520 (E.D. Okla., May 4, 2012), and that a person diagnosed with the syndrome is "more affected by drug use than a normal person," id. (citing Pet.'s Reply, attached 4/17/2015 Letter from Debbi Fields, Executive Director of the National Hydrocephalus Foundation).  However, because Wilson failed to inform counsel of any mental health condition, her only indication of a potential diagnosis was the 1999 MRI, which the state courts reasonably found was insufficient to demonstrate ineffectiveness.

[7]     Trial counsel's testimony is contradicted by a letter to Wilson, in which Wilson's PCRA counsel stated he had spoken with trial counsel regarding Dandy Walker Syndrome, and she told him "she never heard of any such thing and that she had quickly reviewed the file and saw no mention of any such syndrome in [his] various paperwork."  Pet.'s Reply at 9, attached 4/29/08 Ronald E. Elgart Letter.

[8]     In a May 25, 2007 letter to Wilson, Dr. Weiss stated: "I never heard of this condition, so I would not have been helpful if I knew about it.  From the description, it is very unlikely you have it anyway.  Evidence of such a medical condition would be useful at sentencing in a capital case but in yours, there was no room for such testimony."  Pet.'s Reply, attached 5/25/07 Dr. Weiss Letter.  Wilson argues that although trial counsel passed on his medical information to Dr. Weiss, Dr. Weiss was neither a neurologist nor a psychiatrist, and thus counsel "cannot be credited for assigning a task beyond the expertise of the assigned expert."  Pet.'s Reply at 8.  Dr. Weiss is a psychiatrist, N.T. 10/29/03 at 200-02, and Wilson fails to cite authority for his

he believed his Dandy Walker Syndrome, including the cyst on his brain, combined with PCP, caused him to kill Friesma, N.T. 10/3/12 at 15, he has failed to show the state courts' decision that trial counsel's decision not to investigate his mental health history was objectively unreasonable.  See Berryman v. Morton, 100 F.3d 1089, 1101 (3d Cir. 1996) ("An attorney need not fully investigate every potential avenue if he or she has reasonable grounds for not doing so.").

### c.   Failing to Call Character Witnesses

Wilson claims trial counsel was ineffective for failing to call three character witnesses who would have testified he was ordinarily a peaceful person.  Hab. Pet., attachment; Pet.'s Reply at 9.

At the PCRA hearing, trial counsel testified she investigated all three witnesses.  Barbara Smith, who employed Wilson on and off at her bar for ten years, told counsel that Wilson had been a responsible employee, but just before the incident, Wilson came into the bar and was upset and crying because he had broken up with his girlfriend.  N.T. 10/3/12 at 58.  Smith told trial counsel she found Wilson's behavior strange and she feared Wilson.  Id.  Trial counsel further testified the second employer, Richard Sorkin, was hesitant to discuss Wilson, and referred her to his son, Brad.  Id. at 62.  Brad told Faust that Wilson was courteous and extremely trustworthy, but that he had recently begun to constantly get into fights with customers, and he suspected Wilson of using drugs.  Id. at 61-62.

Trial counsel further testified she had successfully litigated a pre-trial motion to exclude Wilson's two prior convictions for assault, which had arisen from Wilson stabbing his girlfriend

---

argument that Dr. Weiss was not qualified to evaluate his medical records, or that counsel was ineffective for passing on his information.

and a police officer while under the influence of PCP.[9]  Id. at 51.  Faust was concerned that by presenting character evidence of Wilson's peaceful and law-abiding nature, she would open the door to cross-examination about Wilson's prior acts of violence.  Id. at 59-60.

The PCRA court found Wilson failed to show the witnesses were available or prepared to cooperate, or that the absence of their testimony prejudiced Wilson.  1/31/13 PCRA Ct. Op. at 8.  The court also credited trial counsel's testimony, noting she had investigated the ex-employers, but had decided not to call them as witnesses to avoid opening the door to Wilson's two prior convictions for assault.  Id. at 7-8 (citing N.T. 10/3/12 at 62-63).  The court concluded Faust had a reasonable strategy in not calling the three witnesses.  Id. at 8.

The Superior Court similarly found Faust had a reasonable strategic basis for not calling the ex-employers as witnesses because the admission of Wilson's prior convictions in evidence would have been "devastating" to Wilson's defense.  8/11/14 Super. Ct. Op. at 11.  The court further found that, based on what the ex-employers had told Faust in interviews, the witnesses' testimony would not have been helpful because although they would have said Wilson used to be a reliable and trustworthy employee, they also would have noted he had recently been acting strangely and violently.  Id.

Witness selection is "among the non-fundamental decisions that counsel is entitled to make at trial."  Government of Virgin Islands v. Weatherwax, 77 F.3d 1425, 1434 (3d Cir. 1996).  Moreover, federal courts generally "will not second-guess tactical decisions of counsel in deciding whether to call certain witnesses."  See id. (internal quotation marks omitted); see also Henderson v. DiGuglielmo, 138 Fed. Appx. 463, 469 (3d Cir. 2005) (counsel's failure to call a

---

[9]    To exclude the convictions, trial counsel had argued that they were relevant only to establish identification, which was not disputed; only Wilson's specific intent to kill was at issue. N.T. 10/3/12 at 51-52.

witness is precisely the sort of strategic trial decision that <u>Strickland</u> protects from second-guessing (internal quotation marks omitted)); <u>Duncan v. Morton</u>, 256 F.3d 189, 201 (3d Cir. 2001); <u>United States v. Pungitore</u>, 965 F. Supp. 666, 674 (E.D. Pa. 1997) <u>aff'd</u>, 172 F.3d 861 (3d Cir. 1998) (witness decisions are strategic and "attorneys are not required to call every witness suggested to them").

Even assuming counsel should have called a witness to testify, Wilson must show "a reasonable likelihood that . . . information [not presented] would have dictated a different trial strategy or led to a different result at trial." <u>Lewis v. Mazurkiewicz</u>, 915 F.2d 106, 115 (3d Cir. 1990). Wilson must establish prejudice by showing what the testimony would have been and that it could have been elicited. <u>See</u> <u>Corley v. United States</u>, Nos. 8-422, 12-2213, 2013 WL 3272411, at *7 (M.D. Pa. June 27, 2013) (petitioner "must make a specific, affirmative showing as to what the [witness's testimony] would have been, and prove that [it] would have produced a different result" (citing <u>Patel v. United States</u>, 19 F.3d 1231, 1237 (7th Cir. 1994)); <u>United States v. Throckmorton</u>, Nos. 02:05-cr-0219, 02:09-cv-0529, 2009 WL 3465111, at *6 (W.D. Pa. Oct. 22, 2009) (petitioner's claims about purported testimony are "completely unsupported" where he "offered no evidence to substantiate his claims that [a witness] would have testified or to the subject matter" of the testimony).

The state courts' determinations were neither contrary to, nor an unreasonable application of, <u>Strickland</u>, or based on an unreasonable determination of the facts. <u>See</u> 28 U.S.C. § 2254(d); <u>Williams</u>, 529 U.S. at 407-08. Wilson has failed to offer evidence, such as affidavits, demonstrating the three ex-employers were willing and available to testify. <u>See</u> <u>Leyva v. Williams</u>, 504 F.3d 357, 367 (3d Cir. 2007) (Pennsylvania courts require a defendant to provide

an "illustration, a demonstration, or an offer of proof" of availability and willingness to cooperate on a missing witness claim).

He also failed to show their testimony would have produced a different trial result.  See Lewis, 915 F.2d at 115.  Wilson argues that the witnesses' proposed testimony—"that until recently [he] was indeed a peaceful, responsible employee," but "[t]hat changed when [he] abused drugs"— would have evidenced his recent strange, erratic behavior, and supported his defense that he had no specific intent to kill and would not have committed the murder absent the use of PCP.  Pet.'s Reply at 10.  However, even if there is a possibility that the jury would have found the witnesses' testimony credible and supported the defense theory, that does not mean it would have agreed with the defense.  Brown v. Wenerowicz, 663 F.3d 619, 633-34 (3d Cir. 2011).  "Speculation is not enough."  Id.  Moreover, Wilson fails to show trial counsel's strategy to forgo character witnesses to ensure Wilson's prior convictions, for substantially similar crimes of assault under the influence of PCP,[10] would not be admitted was unreasonable.  See Henderson, 138 F. App'x. at 469.

    d.   Interfering with Wilson's Right to Testify

Wilson claims trial counsel was ineffective for interfering with his right to testify.  Hab. Pet., attachment; Pet.'s Reply at 10-11.  He argues counsel's reason for advising him not to testify—because he could be cross-examined with his prior criminal history—was not true.  Id.

The PCRA court found Wilson elected not to testify after consulting with counsel, who advised him that if he were to testify, he could open the door for admission of his two prior

---

[10]    Pennsylvania Rules of Evidence provide that although evidence of a person's character is "not admissible to prove that on a particular occasion the person acted in accordance with the character," a defendant in a criminal case "may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it."  Pa. R.E. 404(a)(1)-(2)(A).

assault convictions.[11]  1/31/13 PCRA Ct. Op. at 9-10.  The court noted that trial counsel had

testified during the PCRA hearing she believed the prior convictions would have been admissible

if Wilson's character had been made an issue.  Id. (citing N.T. 10/3/12 at 59-60).  The court

found Wilson's ineffectiveness claim was without merit because Wilson had made a knowing

and intelligent decision not to testify based on trial counsel's reasonable advice.  Id. at 9-10

(citing N.T. 10/3/12 at 23, 40, 60, 64).  The Superior Court affirmed, finding the PCRA court's

determination was supported by the evidence.  8/11/14 Super. Ct. Op. at 12.

      The state courts' decisions were not contrary to, nor an unreasonable application of,

Strickland.  Wilson voluntarily chose to follow trial counsel's reasonable advisement against

testifying.[12]  N.T. 10/3/12 at 23, 40, 60, 64.  Wilson, thus, has failed to show Faust interfered

with his right to testify.  See Campbell v. Vaughn, 209 F.3d 280, 291 (3d Cir. 2000) (federal

courts must defer to the state court determination that counsel had informed habeas petitioner of

his right to testify as petitioner offered no new evidence to contradict finding,); United States v.

Pennycooke, 65 F.3d 9, 11 (3d Cir. 1995) (defendant's waiver of the right to testify, a

constitutional right, must be knowing and intelligent); see also Woodford , 537 U.S. at 25.

Moreover, Wilson fails to explain the proposed substance of his testimony, or allege he was

prejudiced by counsel's advice.  See Palmer v. Hendricks, 592 F.3d 386, 394-95 (3d Cir. 2010)

---

[11]    Although Wilson's assault convictions were not crimes involving dishonesty, the
Commonwealth could have impeached Wilson if he had testified to his nonviolent character.
See Pa. R.E. 404(a)(1)-(2)(A), 609.

[12]    Wilson argues Faust's advisement was legally incorrect, unreasonable, and prejudicial.
Pet.'s Reply at 11.  Wilson notes the trial court had excluded his prior convictions, and
Pennsylvania law, "in limited circumstances, prohibit[s] such evidence [on cross-examination] if
the defendant has no other means to defend himself."  Id. (citing Commonwealth v. Canada, 454
A.2d 643 (Pa. Super. 1983)).  However, the trial court would have had discretion whether to
admit Wilson's prior convictions if he had testified, see Canada, 454 A.2d at 496-97, rendering
Wilson's "allegation . . . an exercise in the hypothetical."  1/31/13 PCRA Ct. Op. at 10.

(without explaining facts to which he would have testified, petitioner failed to make adequate showing of prejudice to support his contention that his attorney failed to advise him of his right to testify).

This claim is meritless.

e.  Not Allowing Wilson to Participate in his Defense

Wilson next claims trial counsel was ineffective, and had a conflict of interest, because she did not allow him to meaningfully participate in trial preparation.  Hab. Pet., attachment; Pet.'s Reply at 12.

Wilson provides facts only for his claim counsel was ineffective for denying him the right to meaningfully participate in his trial preparation.  See Pet.'s Reply at 12.  The PCRA court concluded that because Wilson failed to offer testimony or any information in his briefing regarding the conflict of interest, and only "baldly asserted that Ms. Faust's failure to do the things that Petitioner thought should be done was an inherent conflict," his claim was meritless. 1/31/13 PCRA Ct. Op. at 11.  I similarly find Wilson's conflict of interest claim meritless.  See Rule 2(c), 28 U.S.C. foll. § 2254; Thomas, 221 F.3d at 437.

The state courts also found Wilson's claim that his counsel did not permit him to prepare for trial was meritless, citing trial counsel's testimony that she or her co-counsel met with Wilson 31 times based on her client meeting log.  1/31/13 PCRA Ct. Op. at 10 (citing N.T. 10/3/12 at 49); 8/11/14 Super. Ct. Op. at 13 (same).  The courts also credited trial counsel's testimony that she discussed defenses and trial strategy with Wilson, reviewed and provided him a copy of all discoverable materials, and consulted with him on all decisions of consequence in the trial. 1/31/13 PCRA Ct. Op. at 10 (citing N.T. 10/3/12 at 48-50, 65); 8/11/14 Super. Ct. Op. at 13 (same).

24

The state courts' decisions were not contrary to, nor an objectively unreasonable application of, Strickland.  Wilson fails to show trial counsel prevented him from participating in his trial preparation.  See Johnson, 304 U.S. at 468 (1938); Goins, 464 F.2d at 949 (3d Cir. 1972).  Although he argues the prisoner visiting log contradicts trial counsel's testimony that counsel met with him 31 times, he fails to provide the log.  Pet.'s Reply at 12.  Instead, he provides Inmate Request Forms.  On September 11, 2003, Wilson submitted two requests for trial counsel to be removed from his "case because she's not allowing me to do some home work of my own, she tells me one thing an[d] does another. . . . me an[d] her are disagreeing on to many serious issues."  Id., attachment, 9/11/03 Inmate Request Forms.  Wilson repeated his request on September 22, 2003.  Id., attachment, 9/22/03 Inmate Request Form.  Those forms are insufficient to demonstrate trial counsel's assistance was unreasonable for not involving Wilson in preparing for trial.  See Strickland, 466 U.S. at 688 (counsel has basic duty to consult with defendant on important decisions and keep defendant informed of important developments in course of prosecution).

Wilson also provides copies of two post-trial written requests to see trial counsel to obtain copies of his medical records from Dr. Weiss and his November 2002 mental health and drug intakes at Lower Bucks Hospital.  Pet.'s Reply, 12/8/03 Inmate Request Form; id., attachment, 12/16/03 Inmate Request Form.  In his requests, Wilson wrote that trial counsel had previously refused to provide him with his records.  Id., attachment, 12/16/03 Inmate Request Form.  However, his requests for medical records post-trial does not substantiate his claim that counsel failed to involve him in trial preparation.

Wilson also fails to demonstrate prejudice.  See Strickland, 466 U.S. at 694.  Although he appears to argue he would have helped develop a diminished capacity defense if allowed to

25

participate in trial preparation, trial counsel was not ineffective for not pursuing that defense

because there was little, if any, evidence that Wilson suffered from Dandy Walker Syndrome.

See supra at 15-18.  This claim is also meritless.

        f.   Failing to Object to Trial Court's Inadequate Response to Jury Question

        Wilson argues trial counsel was ineffective by failing to object to the court's inadequate

response to a jury question.  Hab. Pet., attachment; Pet.'s Reply at 12-13.  Wilson argues that

after the jury asked whether it had to consider his intoxication evidence, the court merely reread

its admittedly proper instructions, but failed to specifically require the jury to consider the

defense's evidence.  Id.

        The PCRA court found the trial court's instruction "clearly, adequately, and accurately

reflected the law," and defense counsel's agreement with the court's proposed instruction was

reasonable.  1/31/13 PCRA Ct. Op. at 13.  The court noted the trial court:

> elected to 'restate the definitions of first and third degree murder,
> reminding the jury of the obligations of the Commonwealth to
> prove the elements thereof beyond a reasonable doubt, and then
> immediately in conjunction therewith, offer the instruction on
> voluntary intoxication as a defense to first degree murder, so that
> the jury may see the interplay of that defense and the obligations of
> the Commonwealth to prove certain things beyond a reasonable
> doubt.'

1/31/13 PCRA Ct. Op. at 12 (quoting N.T. 10/30/03 at 123-24).  The court further noted that in

its initial charge, the trial court stated the Commonwealth had the burden of disproving the

defense of voluntary intoxication, and repeated that charge in response to the jury's question.  Id.

at 12-13 (citing N.T. 10/30/03 at 115, 129).

        The Superior Court affirmed, noting the trial court could not tell the jury it "must"

consider voluntary intoxication, "which sounds like a judicial endorsement of [Wilson's]

defense."  8/11/14 Super. Ct. Op. at 15.  The Superior Court found the "trial court's decision to

simply re-read the relevant instructions was not an unreasonable response to the jury's query,"
especially because in re-instructing the jury, the court "emphasized that voluntary intoxication
'applies specifically to the specific intent element' of first-degree murder, and that '[t]he
defendant is permitted to claim as a defense that he was so overpowered by intoxicants or drugs
that the defendant had lost control of his faculties, and was incapable of forming the specific
intent to kill . . . .'" Id. (quoting N.T. 10/30/03 at 128-29). The Superior Court concluded the
trial court's instructions were "thorough, complete, and an accurate statement of the law," and
thus trial counsel was not ineffective for failing to object. Id. at 16.

The state courts' decisions were not contrary to, nor an objectively unreasonable
application of, Strickland. See Waddington v. Sarausad, 555 U.S. 179, 196 (2009) (finding it
was not objectively unreasonable for state court to conclude jury received adequate answers to
questions to resolve its confusion where "judge pinpointed his answers to the particular
instructions responsive to the questions and those instructions reflected state law"). As the trial
court noted, it could only instruct the jury on the law. See United States v. Gaudin, 515 U.S.
506, 513 (1995) (describing role of judge and jury); United States v. Byrd, 415 F. App'x 437, at
*4 (3d Cir. Mar. 1, 2011) (quoting United States v. Wilensky, 757 F.2d 594 (3d Cir. 1985))
("'the trial judge must not abandon his proper role and assume that of an advocate.'"); N.T.
10/30/03 at 125 (trial judge stating: "It would be improper for me to advance anything that even
sounded like an opinion concerning the facts. . . . I can't venture into your deliberative process
beyond simply telling you what the law is . . . ."). By providing the defense instruction again,
including that voluntary intoxication may negate specific intent, the court adequately responded
to the jury's question. See Waddington, 555 U.S. at 196 n.7 (noting "our decision cannot turn on
a de novo review of the record or a finding that the answers were the best way to answer jurors'

questions," but is "limited to whether the state court violated clearly established federal law
when it held that the jury applied the correct standard, in light of the answers given to its
questions"); United States v. Weatherly, 525 F.3d 265, 270 (3d Cir. 2008) ("A court errs in
refusing a requested instruction only if the omitted instruction is correct, is not substantially
covered by other instructions, and is so important that its omission prejudiced the defendant.")
(citation omitted); United States v. Adigun, 998 F. Supp. 2d 356, 365 (M.D. Pa. 2014), aff'd, 609
F. App'x 718 (3d Cir. 2015), cert. denied, 136 S. Ct. 261 (2015) (citing United States v. Leahy,
445 F.3d 634, 642 (3d Cir. 2006)) ("The determination of whether to provide a specific jury
instruction lies within the trial judge's discretion.").

Wilson argues that merely rereading the initial charge relieved the Commonwealth of its
burden and failed to answer the jury's question because it was left "with the impression it could
reach a verdict without considering voluntary intoxication."[13]  Reply at 14-15.  However, despite
the jury's question, he fails to show the jury did not consider the defense after the trial court
carefully provided instructions on voluntary intoxication a second time.  See Estelle, 502 U.S. at
72 (the only question for federal habeas court reviewing claim of incorrect jury instructions is
"whether the ailing instruction by itself so infected the entire trial that the resulting conviction
violates due process") (internal quotation marks and citation omitted).  Further, Wilson cites no

---

[13]      Wilson argues this case is "exactly" like United States v. Hicks, 748 F.2d 854 (4th Cir.
1984), in which the court held the trial court erred in failing to provide an alibi instruction when
there was sufficient evidence to permit the jury to consider the defense. Pet.'s Reply at 15-16.
Unlike Hicks, however, the trial court in Wilson's case provided an instruction on voluntary
intoxication twice.

authority for his claim that the trial court was required to tell the jury it was obligated to consider his defense.[14]  Pet.'s Reply at 13-14.

Counsel was not ineffective for failing to object to the court's answer to the jury's question.  See  Khan v. Gordon, No. CIV.A. 11-7465, 2013 WL 4957479, at *7 (E.D. Pa. Sept. 12, 2013) ("Counsel cannot be deemed to have violated professional norms by failing to raise a meritless objection.").

Accordingly, I make the following:

_____

[14]     Wilson argues "[t]here is no articulable difference between suppressed evidence, undiscovered evidence or evidence never considered" because "the right to meet the prosecution's case is denied" in each instance.  Pet.'s Reply at 16.  However, Wilson has failed to show the jury never considered his evidence because he presented his defense through expert witnesses, see N.T. 10/29/03 at 143 (Dr. Lage opining Wilson's intoxication would have not had the cognitive ability to form a specific intent to kill), 218 (Dr. Weiss opining Wilson "did not have the capacity to make fully-formed and conscious [homicidal] intentions" due to intoxication), and the trial judge charged the jury on his defense.

## R E C O M M E N D A T I O N

AND NOW, on August 2, 2016, it is respectfully recommended that the petition for writ of habeas corpus be DENIED with prejudice.  It is further recommended that there is no probable cause to issue a certificate of appealability.[15]  Wilson may file objections to this Report and Recommendation within 14 days after being served with a copy.  See Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.  See Leyva v. Williams, 504 F.3d 357, 364 (3d Cir. 2007).

BY THE COURT:


/s/ Timothy R. Rice
TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE

---

[15]    Because jurists of reason would not debate my recommended disposition of the petitioner's claims, a certificate of appealability also should not be granted.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).